UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X Civil Case No.
JODI L. GRESHAM,

Plaintiff,

vs.

**COMPLAINT**

GIMME CREDIT, LLC and ARTHUR ROSENZWEIG, individually,

**Plaintiff Demands a Trial by Jury**

Defendant.
--------------------------------------------------------------------X

Plaintiff Jodi L. Gresham, by her attorney(s), Erdal Employment Law, LLC, hereby complains of Defendants Gimme Credit, LLC (hereinafter, "Gimme Credit" or the "Company"), and Arthur Rosenzweig, individually (hereinafter, "Rosenzweig") (collectively "Defendants"), upon information and belief, as follows:

## PRELIMINARY STATEMENT

1. Plaintiff is a highly skilled leader in the area of public relations, having over two decades of experience of success running her company, Jodi Lin PR. To induce Plaintiff to accept a job with Defendant Gimme Credit, Rosenzweig offered Plaintiff the position of Media Relations Director, with quarterly-based bonuses of 33% based solely on her professional performance; untethered to sales success or any other aspect of the business. However, after Plaintiff accepted the offer for the position of Media Relations Director, Defendants illegally withheld Plaintiff's bonuses and compensation that she earned throughout her employment. In addition, Defendants illegally failed to provide its employer contributions to Plaintiff 401(k) retirement account in her October 15, 2025, or to make any contributions to her 401(k) in 2026.

## NATURE OF THE CASE

2. Plaintiff brings this action against Defendants for, *inter alia*, violations of Article 6 of §191, *et seq*., of the New York Labor Law ("NYLL"), the Employee Retirement Income Security Act, 29 U.S.C. §1001, *et. seq.* ("ERISA"), and breach of contract and related common law claims based on the supplemental jurisdiction of this Court pursuant to United Mine Workers of America v. Gibbs, 383 U.S. 715 (1966) and 28 U.S.C. § 1367.

## JURISDICTION AND VENUE

3. Jurisdiction of this action is conferred upon this Court as this case involves a federal question under ERISA. The Court also has jurisdiction pursuant to 29 U.S.C. § 2617; 28 U.S.C. §1331, § 1343 and pendent jurisdiction thereto.

4. This Court also has supplemental jurisdiction under the laws of the State of New York.

5. Venue is proper in this Court, because Gimme Credit is located in the State of New York, County of Westchester, within the Southern District of New York.

## PARTIES

6. Plaintiff is a former employee of Defendants and a resident of the State of New Jersey.

7. During all times relevant to this Complaint, Plaintiff was and is an employee of Defendants as the above-referenced statutes define the term "employee."

8. Defendant Gimme Credit is a foreign limited liability company incorporated in the State of Delaware.

9. Defendant Gimme Credit is a corporate bond research company with its headquarters located at 520 White Plains Road, Tarrytown, New York.

10. Defendant Rosenzweig is an owner of Defendant Gimme Credit.

11. Defendant Rosenzweig is Chief Executive Officer of Defendant Gimme Credit.

12. At all times material, Defendant Rosenzweig was a Director of Gimme Credit.

13. At all times material, Defendant Rosenzweig was an Officer of Gimme Credit.

14. At all times material, Defendants meets the definition of an "employer" under all applicable state and local statutes

**MATERIAL FACTS**

15. On or about May 1, 2023, Plaintiff began her employment with Gimme Credit as Media Relations Director, earning a salary of $120,000.00.

16. At the time, Plaintiff had her own business, but after some negotiations, she agreed to join Gimme Credit.

17. In addition to her salary, Plaintiff was eligible to receive a 33% bonus to be paid quarterly based solely on her professional performance; without any adjustment based on her sales or any other metric.

18. At the time, the greatest compensation Plaintiff could earn per quarter was $10,000.00.

19. However, each quarter, Gimme Credit failed to provide full bonuses as promised, even when Plaintiff exceeded Gimme Credit's expectations.

20. Instead, Defendant Rosenzweig stated to Plaintiff that **"$7,500 for the quarter is good, this way during another quarter, when you don't do as well- I can give you the same."**

21. Notably, throughout this period, Plaintiff did not have any issues related to her work performance.

22. Plaintiff

23. Accordingly, Plaintiff is owed the full bonus for the first year of her employment at the Company.

**Plaintiff is Promoted to the Position of Head of Marketing & Media Relations**

24. Furthermore, during an in-person lunch on October 4, 2023, Defendant Rosenzweig offered, and Plaintiff accepted, a promotion to the position of Head of Marketing & Media Relations, at a salary of $180,000.00 with the eligibility for her to earn an additional $60,000.00 quarterly bonus.

25. Although she began work immediately in her new role, Plaintiff was not paid the salary of the Head of Marketing & Media Relations position until January 1, 2024.

26. At the end of the first quarter, in or around March 31, 2024, Plaintiff discussed her bonus with the Company's Chief Accounting Officer, Antal ("Tony") Foldi.

27. To her surprise and confusion, Mr. Foldi advised Plaintiff that Gimme Credit was **only** providing employees with annual bonuses.

28. Despite this discrepancy, Plaintiff let the issue go, believing that a single bonus would now be paid on schedule with the remainder of the staff.

29. In or around November 2024, Ms. Gresham had an in-office meeting with Defendant Rosenzweig, wherein Rosenzweig "discovered" that Plaintiff had not been paid her quarterly bonuses.

30. Defendant Rosenzweig explicated advised Plaintiff that she **"deserved the entire $60,000"** and that she should receive it **"immediately."**

31. However, to date, Gimme Credit has failed to pay this in full.

**Plaintiff is Promoted to the Position of Chief Communications Officer**

32. On or about January 1, 2025, Plaintiff was promoted to the position of Chief Communications Officer ("CCO").

33. Thereafter, Plaintiff and Defendant Rosenzweig executed a February 7, 2025 Offer Letter ("Offer Letter") which specified the terms and conditions of her employment as CCO.

34. In the Offer Letter, Gimme Credit promised Plaintiff a salary of $200,000.00 as CCO, with a target bonus of up to 30% of her base annual salary – *i.e.* the potential to earn a $60,000.00 bonus. The below are the KPIs that were laid out for 2024-2025, benchmarks which Plaintiff easily met and, indeed, exceeded. However, upon information and belief, no Gimme Credit employee received a 2025 bonus:

| Target Bonus Composition | % of Base | $ Amount | Based on: |
|---|---|---|---|
| First Third | 10% | $20,000 | Media Hits: Sales Leads Generated |
| Second Third | 10% | $20,000 | Hitting or Exceeding Budget Targets |
| Third Third | 10% | $20,000 | Productive collaboration and reporting with CEO, other managers and employees |

35. In April 2025, Defendant Gimme Credit advised its employees that the bonuses from 2024 would be paid over a year's time starting April 1, 2025.

36. However, Gimme Credit advised Ms. Gresham that her bonus would be paid over a time period of six (6) months, rather than one (1) year. **To date, this bonus remains incomplete.**

37. In August 2025, adding to payroll, Gimme Credit hired two (2) analysts, Alessandro Rovelli and Danielle Leone.

38. **Yet on September 30, 2025, Plaintiff was not paid the $8,333.33 in salary for the work she completed during that pay period.**

39. In addition, from on or about October 2025 through the end of the year, the Company provided Plaintiff with several late payments for which she was responsible for transfer fees.

40. Thereafter, on October 22, 2025, Gimme Credit held an executive meeting which included Plaintiff.

41. Based on this meeting, the Company's employees were told that a portion of their salaries would be deferred, initially by 20%, but after reevaluation, deferred by 10%.

42. In addition, Defendant Gimme Credit advised that there would be a 20% cut in employer contributions to insurance.

43. Plaintiff requested that Defendants send over any contracts or agreements regarding the new payment terms, including the salary deferment and 20% cut in employer contributions.

44. Plaintiff also requested information on interest on both her outstanding bonus and back pay.

45. To date, Gimme Credit has failed to provide Plaintiff with any contracts, agreements, documents or information related to the reductions unilaterally imposed upon the team, nor did the Company provide the requested interest on Plaintiff's bonuses and back pay.

46. **On or about November 15, 2025**, **Gimme Credit cut the gross payrolls of seven (7) team members, including Plaintiff,** allegedly due to "poor sales," and even though there was no contract to support such a cut in Plaintiff's salary.

47. **Then, on or about January 1, 2026, there was a 20% cut to the employer's contribution to employees' insurance**, again despite no contract or agreement to reflect this change.

48. **On January 30, 2026, Gimme Credit again failed to provide Ms. Gresham with her expected payment of $7,500.00 for the exemplary work that she performed for the Company**.

49. Pointedly, on February 1, 2026, two (2) analysts (Cedric Rimaud and Armand De Cosnac), were hired and began their employment at Gimme Credit. They came in the addition to another analyst, Len Reininger, who started at the end of 2025.

50. Then, on or about February 13, 2026, Defendants terminated Plaintiff's employment via email, with a termination date of March 15, 2026. **However, she was not paid her income of $7,500.00 for the pay periods of Januay 30, 2026; February 13, 2026; February 27, 2026; or March 13, 2026**.

51. Following receipt of the termination email, and the Company's failure to pay her as indicated above, Plaintiff has reached out to Defendant Rosenzweig on several occasions to request the monies owed.

52. Furthermore, upon review of her paystubs, Gimme Credit has failed to provide its employer contributions to Plaintiff's 401(k) retirement account in her October 15, 2025 paycheck, which upon information and belief is a 12% contribution.

53. Gimme Credit has also failed to provide *any* employer contributions to Plaintiff's 2026 payments, ***even though the money was deducted from the sole payment made to Plaintiff for this year***.

54. **This is not only a violation of the Company's good faith and fair dealing with respect to Plaintiff's wages, but is a violation of § 515 of ERISA.**

55. Defendants failed to pay Plaintiff the salary and bonuses in breach of the promises made upon her hiring as well as in the Offer Letter, in violation of the NYLL.

56. Defendants acted in bad faith with the purpose of depriving Plaintiff of the rights and benefits under the parties' agreement.

57. Defendants breached the implied covenant of good faith and fair dealing by failing to pay Plaintiff her rightful salary and bonuses and terminating her employment.

58. Defendants acted in bad faith or with improper motive by denying Plaintiff her salary and bonuses based on reasons unrelated to performance.

59. Defendants reneged on a promise of bonuses and the criteria for determining the award of bonuses, causing Plaintiff to suffer substantial financial harm.

60. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits, and other compensation, which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

61. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive and liquidated damages against Defendants.

**AS A FIRST CAUSE OF ACTION**
**UNDER NYLL, Article 6, §§ 190 *et seq.***

62. Plaintiff realleges and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

63. Defendants are employers with the meaning of the NYLL and is subject to all the duties and obligations as set forth therein.

64. Plaintiff is an employee within the meaning of the NYLL.

65. Defendants failed to pay Plaintiff wages in the form of her salary and bonuses in accordance with their agreed-upon terms of employment, in violation of NYLL §193.

66. The foregoing conduct of Defendants constitute willful violations of the NYLL.

67. Defendants violated all other applicable sections of the NYLL, Article 6, §§ 190 *et seq*.

68. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, including liquidated damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

**AS A SECOND CAUSE OF ACTION**
**UNDER ERISA**

69. Plaintiff realleges and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

70. Defendants are employers with the meaning of ERISA and is subject to all the duties and obligations as set forth therein.

71. Plaintiff is an employee within the meaning of ERISA.

72. Under ERISA, an employee may bright a civil action "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." ERISA § 502(a)(1)(B), 29 U.S.C. 1132(a)(1)(B).

73. Pursuant to ERISA § 515, 29 U.S.C. 1145:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

74. Plaintiff participated in Defendants' 401(k) plan.

75. Upon information and belief, Defendants' 401(k) plan documents require that the Employer match employee contributions.

76. Upon information and belief, Defendants' 401(k) plan documents define unpaid employer matching contributions as plan assets.

77. Plaintiff was deferring her own money into the aforementioned 401(k) plan.

78. Beginning in October 2025, and continuing to the March 15, 2026 date of her termination, Defendants failed to remit employer and/or employee contributions to the 401(k) plan.

79. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, including liquidated

damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses

**AS A THIRD CAUSE OF ACTION:**
**BREACH OF CONTRACT**

80. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

81. Defendants' promises made upon Plaintiff's hiring as well as in the Offer Letter constitute valid and binding contracts between Plaintiff and Defendants.

82. Plaintiff performed her obligations under the respective agreements.

83. As set forth fully above, Defendants materially breached the agreements by failing to pay Plaintiff's wages and bonuses.

84. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees, costs, and expenses.

**AS A FOURTH CAUSE OF ACTION:**
**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

85. Plaintiff repeats and realleges each and every allegations contained in the above paragraphs of this Complaint.

86. The agreements are binding contracts between Plaintiff and Defendants.

87. Defendants deliberately prevented Plaintiffs from receiving the benefits of the parties' agreement, including but not limited to salary, bonuses, and 401(k) contributions.

88. Defendants acted in bad faith or with improper motive to destroy or injure the right of Plaintiff to receive the benefits or reasonable expectations of the parties' contracts.

89. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, including punitive and/or liquidated damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees, costs, and expenses.

**AS A FIFTH CAUSE OF ACTION:**
**UNJUST ENRICHMENT**

90. Plaintiff repeats and realleges each and every allegations contained in the above paragraphs of this Complaint.

91. By refusing to pay wages, bonuses, 401(k) contributions, and FICA taxes, Defendants have been unjustly enriched and have received the benefits of Plaintiff's services for which, in equity and good conscience, Plaintiff should be fairly compensated.

92. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff have suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted under law, in addition to reasonable attorneys' fees, costs, and expenses.

**AS A SIXTH CAUSE OF ACTION:**
**PROMISSORY ESTOPPEL**

93. Plaintiff repeats and realleges each and every allegations contained in the above paragraphs of this Complaint.

94. Defendants made a clear and definite promise that Plaintiff would be paid a salary and bonuses, with the expectation that Plaintiff would rely on that promise.

95. Plaintiff reasonably relied on Defendants' broken promise and suffered definite and substantial detriment, including but not limited to, leaving her former business to join Defendants' Company.

**WHEREFORE,** Plaintiff respectfully requests judgment against Defendants:

A. Declaring that Defendants are liable for failure to pay wages under the NYLL; failure to contribute to Plaintiff's 401(k) in violation of ERISA; breach of contract; breach of the implied covenant of good faith and fair dealing; unjust enrichment; and promissory estoppel;

B. Awarding Plaintiff unpaid bonuses;

C. Awarding damages to Plaintiff for all lost wages and benefits, past and future, back pay and front pay, resulting from Defendants' termination of Plaintiff's employment, and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practices;

D. Awarding Plaintiff damages for Defendants' breach of contract, including compensatory damages and consequential damages;

E. Awarding Plaintiff compensatory damages for mental, emotional, and physical injury, distress, pain and suffering, and injury to her reputation;

F. Awarding Plaintiff liquidated damages under the NYLL and ERISA in an amount to be determined at trial;

G. Awarding Plaintiff punitive damages in an amount to be determined at trial;

H. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action;

I. Awarding prejudgment interest on all amounts due; and

J. Awarding Plaintiff such other and further relief as this Honorable Court may deem equitable, just, and proper to remedy Defendants' unlawful employment practices.

**JURY DEMAND**

Plaintiff demands a jury trial on all issues to be tried.

**ERDAL EMPLOYMENT LAW, LLC**
Attorney(s) for Plaintiff
Jodi L. Gresham

By:/s/ Erdal Turnacioglu
Erdal Turnacioglu, Esq.
25 Pompton Avenue, Suite 101
Verona, New Jersey 07044
(973) 559-7540

Dated: June 25, 2026